May it please the court, Ms. Granger, Ms. Whistler. My name is Talmadge Newton. I'm arguing today on behalf of Appellant William Clarett. Let me interrupt. We know that when the court knows that you were appointed under the Criminal Justice Act. That is correct, your honor. And we want you to know that the court deeply appreciates your willingness to accept the assignment. Thank you, your honors. The appellant was charged and ultimately convicted of one count of conspiracy to commit and use of a facility of interstate commerce in the commission of a murder for hire. The appellant at trial attempted to argue that he was entrapped into the commission of the crime by another inmate at the jail working at the behest of the federal government. Ultimately, the district court refused to submit an instruction on entrapment. As a threshold matter in preparing for oral arguments, I have identified an error that I made in the appellant's brief that needs to be brought to the attention of the court. The appellant's brief contained an erroneous standard of review. I cited to U.S. v. Williams and that would be an inappropriate citation as that case dealt with the wording of a submitted instruction. While this case instead deals with the refusal to issue an instruction. I believe that the government's de novo suggestion is correct and that U.S. v. Young would be the appropriate case in that. And I'd just like to clear that up before I move forward. This appeal centers around the appellant's contention that there was in fact sufficient evidence before the court to mandate the submission of Eighth Circuit model criminal instruction 9.01 on the affirmative defense of entrapment. The appellant does not dispute the law of the case. Rather, he maintains that there was enough evidence before the district court to warrant the submission of this instruction. The district court ruled or made its decision on the inducement prong, correct? As I read it, didn't really get to predisposition? I believe the district court hit nearly every prong in its decision. Because it seems that the inducement is more legally than the predisposition, which seems more facty. Does that affect how we look at this? Not necessarily. I think both of those are pretty facty. I believe that the district court's main concern, as I read it, was whether or not the fellow inmate was in fact or could in fact be considered a government agent or working at the behest of the government. And I believe that the district court was concerned that, A, he was not an employee of the government. So would he even qualify as the type of individual that could entrap Mr. Claret? And I would argue that there were, in fact, sufficient facts that the fellow inmate had known Mr. Claret from the neighborhood. They were acquaintances, if not friends. He came to the jail, and the evidence was that they talked every day, that they talked about this case. And he testified and made statements that he was working hard to make this work, to get cooperation. I think there was also plenty of evidence that, without question, this other inmate had met with the government in January of that year, was actively working. He testified that he was trying to keep the terms of his cooperation open. But if I understand the timing, he met with the government, I think you said January. It wasn't for, what, until May or April, sometime before he and Mr. Claret were in the same jail or holding position? That's correct, Your Honor. So does that time – does that sort of break that connection between the time the government says, look, you don't have anything, and there couldn't – he couldn't have told them anything about Mr. Claret? Like, oh, this guy's in here, or anything like that. I don't believe it does, because I think in January is when the government incentivization happened, where clearly this inmate believed that he was working for terms of cooperation, that he needed this. I believe the evidence showed that when he left that meeting in January, he believed he was working for a deal, that he was out to find something. And that's my argument, that he was looking to find anything, that he set this entire course of action in motion, that he caused this when he ran into Mr. Claret and saw the opportunity and said, I have this government deal, I need to make this work, here's the guy to do it with. Does the government have to know that he's doing this under the standard? I think it's for the jury's determination with the evidence at this trial whether the government knew. Because there were the terms of cooperation that he knew who to reach out to in the government. He had this meeting. Whether the jury ultimately rejected that argument, that's up to the jury. But I believe that's the key point of this appeal, is it should have gone to the jury to consider that. When you say terms of cooperation, what do you mean? Did he sign some kind of proffer agreement or a cooperation agreement? No, Your Honor. He used the statement, keep the terms of his cooperation. And I think the critical word there is terms. Terms imply a deal. Terms apply an offer and an anticipated acceptance or a negotiation. And I think that that should have gone to the jury for consideration. Does an agency require some level of management, direction, or oversight? I don't believe that for entrapment it would. I think that for this case, this inmate has to be connected with the government. Well, aren't 40% of the inmates that we sentence connected to the government if all it is is that we're holding open the possibility that you may cooperate? In fact, maybe 100% of the people that have pled guilty, if you walked in with some kind of information about some separate offense, some separate crime that is of value, they would be receptive to listening. I mean, do you know any prosecutor that never listens? No, Your Honor, I don't. And I agree that that's a concern. I think this case is different, though, in that there was a meeting where this individual was attempting to get cooperation, attempting to get his 5K, left believing that he had terms and looked like he was actively working to create something, which we believe was this murder-for-hire plot. Again, the government would be free at closing to call that ridiculous, to attack it viciously. I would go the other way and make an impassioned plea that all of the evidence supports it. But Mr. Clairaut was denied the ability to have the jury consider it because the instruction was refused by the court. And I think that's where the error is in this case. I'll reserve my remaining time if there are no questions. Very well. You may do so. Thank you. We'll hear from the government. Ms. Whistler, is it pronounced? Yes, sir. You may proceed. Good morning. Thank you, Your Honor. Good morning. My name is Serena Miller Whistler. It is my great privilege to represent the government in the appeal of William Clairaut, who, as counsel has indicated, is appealing from his conviction of the use of a facility of interstate commerce in a conspiracy to commit murder-for-hire. I also served as trial counsel on behalf of the government with my colleague, Assistant United States Attorney Aaron Granger, who is seated to my right. Obviously, the only issue before the court today is whether or not the district court erred in refusing to instruct the jury as to the affirmative defense of entrapment. And before I begin to respond to Mr. Newton's argument, I would like to make a further correction, if I may, to a statement that's contained in Mr. Clairaut's reply brief. I firmly believe that this error in the reply brief is completely inadvertent and unintentional, but it is nevertheless significant. On page 5 of Mr. Clairaut's reply brief, Mr. Newton writes, and I quote, Appellant Clairaut testified that Petty was talking with him nearly every day about his case and the witness. That statement is factually inaccurate. In point of fact, Mr. Clairaut did not testify at trial. And that distinction is absolutely critical in conjunction with this appeal. Because if Mr. Clairaut had testified at trial, the complexion of this case may look very different at this stage. As the court has correctly noted, one of the factors that's at issue here today is whether or not Mr. Petty was acting as an agent of the government. And Mr. Newton has advanced the proposition that Mr. Petty's subjective belief, whatever that may have been, that he might have been working on behalf of the government, carries the day. The government categorically disputes that that's the case. Well, I'm not, I guess I don't hear his argument to say that it carries the day, but at least it gets him to the jury to determine whether, under this sort of a system, where there's a whole lot of incentive for folks facing federal time to work with the government. And I think it would be kind of a stretch to say that the government would be surprised if someone came, like him, Petty, came back and said, hey, I've got some more information. That wouldn't be a shocking phone call from the jail to the agent. Certainly not, Your Honor. And the reason that I raise that issue is that this is an issue that has already been evaluated and decided time and time again. And I would point the court to the Jones case out of the Ninth Circuit, which I've cited in my brief at page 20. And that case clearly establishes that inducement must be provided by someone acting for the government. A person is a government agent when the government authorizes, directs, and supervises that person's activities and is aware of those activities. There is absolutely no evidence that was presented in Mr. Claret's case that, during the time period between January of 2016 and May of 2016, that the government was aware that Mr. Petty was engaged in any activities whatsoever. There is certainly no evidence that the government authorized, directed, or supervised any of those activities. Do you need the supervision part? What if you could say, well, you could at least make the inference that the government would say, well, no, we knew we had reason to believe that he was going to try to do something. But do you need the actual supervision to send it to the jury, some evidence of supervision? Your Honor, the Jones case suggests that that is required. Do we require that in this circuit? Your Honor, I believe that the cases that have been decided by this court, including Neal and Aboumayala, do stand for the proposition that the government is required to exercise some supervisory oversight as to the individual who is alleged to have been acting as a government agent. Certainly, Your Honor, the government receives information from defendants all the time. And as Your Honor has indicated, that is not surprising in this case or any case. But whether or not Mr. Petty subjectively believed in his own head that he might be acting on behalf of the government is utterly immaterial if he is not, in fact, acting on behalf of the government. And there was no evidence presented at trial that between January and May of 2016, that Mr. Petty was ever asked to do anything on behalf of the government, that he was instructed to do anything on behalf of the government, or that the government was even aware that Mr. Petty was engaging in these activities. Now, as the court correctly noted, none of this happened until Mr. Petty was placed in the same jail as Mr. Claret. And thereafter, the conversations began wherein Mr. Claret advised Mr. Petty that he was desirous of having Shamanique Wilson murdered. Now, after Mr. Petty learned this information, and incidentally, Mr. Petty's statements in that regard are corroborated at least to some extent by the testimony of Barbara L. Jones, who very importantly testified that Mr. Claret was talking about murdering this witness as early as the summer of 2015. So clearly, this was an ongoing effort on the part of Mr. Claret, which offers further evidence that there was simply no inducement in this case. Even assuming for the sake of the argument that Mr. Petty was somehow transformed into a government agent by virtue of his subjective belief that he was one, there is absolutely not a single shred, not a scintilla of evidence that there was any inducement offered to Mr. Claret. Even in his reply brief, Mr. Claret does not suggest that there was ever any money, any promise, any threat, any coercion offered to him by Mr. Petty or anyone in exchange for encouraging him to commit this offense. In fact, all of the evidence in the case that was presented at trial was quite to the contrary. The evidence presented at trial was that this plan was entirely of Mr. Claret's design. He had spoken about it as early as a year before this offense actually occurred. Mr. Claret willingly contacted the undercover police officer after he was provided with a phone number, and even after Mr. Petty ceased to be involved in these activities, Mr. Claret continued on his own to make contact with the undercover officer. Mr. Claret instructed the undercover officer to visit him at the jail. He used another inmate's name in order to accomplish that visit. He was using other inmates' PIN numbers in order to make surreptitious phone calls. When the undercover officer visited Mr. Claret at the jail, they spoke through the glass rather than using the telephone that was provided because they knew it would be recorded. And finally, and perhaps most importantly, Mr. Claret removed $500 from his commissary account, which he provided to his brother with instructions to provide the money to Barbrielle Jones, who, of course, later provided that money to the undercover officer as a down payment for the murder of Ms. Wilson. Nowhere in any portion of the trial or through any witness was there ever any evidence offered that Mr. Claret was offered any sort of inducement by Mr. Petty or any other person on behalf of the government. In point of fact, that evidence could have come from a variety of sources. As I've indicated, the inadvertent error in the reply brief suggests that Mr. Claret testified, which he did not. Had he testified, he could have offered evidence that there was some inducement made to him. That evidence could have been elicited through cross-examination of the government's witnesses. But under your theory, even that wouldn't get the instruction to the jury, right? Because you're saying without some kind of supervision by the government over Petty, that that is dispositive. Your Honor, I think we're talking about two different periods of time here. And Your Honor asked a question of Mr. Newton, who answered it differently than I will answer it. The district court found in its findings of fact that as of May, when Mr. Petty wrote the letter to the government and the second meeting occurred, and thereafter Mr. Petty met with the undercover officer and special agent Hungria of the ATF, Mr. Petty was provided with an undercover cell phone number and was asked to facilitate a sort of telephone introduction between Mr. Petty, I'm sorry, between Mr. Claret and the undercover officer. The district court found and the government concedes that thereafter, Mr. Petty could have been considered and was a government agent. At that point, he was acting at the direction of the government. He was being supervised by agents of the government. And so at that point, the government does believe that Mr. Petty would have been a government agent, not during the time period between January and May when this plot was first hatched. So you're talking about the inducement during post-May? Correct. And even post-May, it's important to note, there was absolutely no evidence of inducement. Mr. Petty was extensively cross-examined at trial. He was extensively asked about his motivation, his subjective belief that perhaps there might be something in the offing for him down the road, that he was desirous of receiving a sentencing reduction. But there was absolutely not a shred of evidence, and the district court reiterated numerous times, that there was simply no evidence whatsoever that Mr. Petty induced Mr. Claret to commit this crime. Well, at that earlier stage, Bradley requires some instruction by a true government agent, right? I mean, don't Neal and Bradley both kind of stand for the proposition that unless there is some inducement offered to the person who's going to perform the entrapment, and then that entrapment activity, whatever that may be, is at the direction or at least somehow under the knowledge and supervision of the government, that if you don't show both, you don't get there, right? Exactly. The inducement has to be offered by somebody who's acting at the behest of the United States. It doesn't matter what – and I think the LaRue case, and just very quickly, if I may, the LaRue case I think is interesting from the standpoint that the facts significantly mirror the facts that we have in this case, where there's this third-party intermediary involved. And the LaRue case makes it very clear that regardless of what might be offered to this third-party intermediary, the crux of the analysis is, what if anything is offered to the defendant who stands accused of this offense? And in this case, as in LaRue, not a single thing, there is no evidence whatsoever that Mr. Claret was ever offered any inducement to commit this crime. I see that my time is up, so unless there are additional questions, I will submit it. Thank you. Very well. Mr. Newton. Thank you, Your Honors. One morning and two errors in my brief. The government is correct. That should read Petty testified that Petty was talking with him, Claret, nearly every day. And there's no question that my client did not testify at this trial, but that is a critical section because of inducement. I do not agree with the government that inducement requires an item to be bargained for. In fact, United States v. Stanton is very clear. It says inducement may take different forms, including pressure, assurances that a person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment. The fact that Mr. Petty was speaking with Mr. Claret every day, that they had a relationship, that can be the basis of inducement. The government's free to argue that that's nonsense, but again, that comes to the crux of this appeal, is that all of these issues, agency, inducement, predisposition, all had evidence both for and arguably against them. But that is a question for the jury. The jury is free to believe or disbelieve any of this evidence, but it should have been them and not the court that considered it. Mr. Claret approached this from an angle of having an affirmative defense of entrapment and was denied the ability to present that defense to the finder of fact. The district court erred in refusing to give instruction 9.01 on the affirmative defense of entrapment, and I'm asking that the judgment of the district court be reversed and this matter be remanded for a new trial. If there are no questions, I'll yield the remainder of my time. Very well, thank you. Thank you, Your Honors. Well, the case has been very vigorously argued. It is now submitted and we will take it under consideration. Madam Clerk, does that complete our oral argument?